UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| SIDNEY D. JENKINS, III,<br><br>Plaintiff,<br><br>v.<br><br>C/O CAMPOSE, C/O ROYSE, LEE YOUNG, and JONI AIYEKU,<br><br>Defendants. | No. 4:14-CV-5111-JTR<br><br>REPORT AND RECOMMENDATION TO GRANT DEFENDANTS' MOTION FOR SUMMARY JUDGEMENT |

**BEFORE THE COURT** is Defendants' Motion for Summary Judgment. ECF No. 37. Plaintiff, an inmate at the Washington State Penitentiary (WSP), appears *pro se*. Defendants are represented by Aaron M. Williams, Washington State Assistant Attorney General. The parties have not consented to proceed before a magistrate judge.

## PROCEDURAL HISTORY

Plaintiff filed a complaint on October 15, 2014. ECF No. 1, 9. Plaintiff's complaint alleges Defendants have substantially burdened his religious practice by preventing him from engaging in cleansing rituals required by the Muslim religion. ECF No. 9. The Court subsequently directed service on Defendants and the Office

REPORT AND RECOMMENDATION . . . - 1

of the Attorney General for the State of Washington. ECF No. 13. Defendants filed an Answer on June 15, 2015. ECF No. 21. On November 13, 2015, Defendants filed a motion for summary judgment, supported by a memorandum, and a statement of facts. ECF No. 37-38. On December 18, 2015, Plaintiff filed a response in opposition to Defendants' motion for summary judgment, ECF No. 45, and Defendants filed a reply memorandum on December 31, 2015, ECF No. 46. The briefing having been finalized, Defendants' motion for summary judgment is now before the Court.

## BACKGROUND

Plaintiff, a Muslim, brings this civil rights action pursuant to 42 U.S.C. §§ 1983 and 1985. Plaintiff claims Defendants unreasonably burdened his religious practice, in violation of his civil rights under the First Amendment Free Exercise Clause, by prohibiting him from engaging in religious cleansing rituals in the WSP H Building, located in the West Complex. ECF No. 9 at 6-8, 12. Plaintiff additionally argues Defendants conspired to violate his rights by neutralizing a prior grievance. ECF No. 9 at 5, 8-11. Plaintiff seeks monetary damages as well as prospective and declaratory relief. ECF No. 9.

Defendants argue Plaintiff's claims must be dismissed because there were legitimate penological reasons for preventing inmates from performing ritual cleansings in the H Building restroom. ECF No. 37 at 4-9. Defendants also deny they engaged in a conspiracy to rescind Plaintiff's previous grievance response. ECF No. 37 at 10-13. Lastly, Defendants assert they are entitled to qualified immunity from damages. ECF No. 37 at 13-15.

## FACTS

At the times relevant to this case, Plaintiff was incarcerated at the WSP. Defendants Jesse Campos and Jerry Royse were employed at the WSP as Correctional Officers. ECF No. 38 ¶¶ 5-6. Correctional Officers ensure prison rules are followed; provide safety and security for inmates, staff and visitors; and

REPORT AND RECOMMENDATION . . . - 2

assist in controlling, directing and monitoring activities and the movement of inmates. ECF No. 38 ¶ 5. Defendant Joni Aiyeku was employed at the WSP as a Corrections Specialist 2/Grievance Coordinator. ECF No. 38. ¶ 7. Her job duties included interpreting and explaining applicable laws, rules, regulations, policies and procedures; monitoring program activities for complaints; reviewing operational memorandums relevant to assigned program areas; and being knowledgeable of directives, policies, operational memorandums, regulations and statutes. ECF No. 38. ¶ 7. Defendant Aiyeku also receives, tracks, processes, reviews, evaluates, and researches offender grievances in accordance with Department of Corrections (DOC) policy. ECF No. 38. ¶ 8. Lastly, Defendant Lee Young was employed at the WSP as a Grievance Coordinator. ECF No. 38. ¶ 9. His job duties included receiving, tracking, processing, investigating as necessary, and responding to offender grievances in accordance with DOC policy. *Id*.

In March 2013, Plaintiff used the restroom in the WSP H Building, located in the West Complex, and thereafter attempted to perform his religious cleansing ritual.[1] ECF No. 9 at 6. Defendants Royce and Campos stopped Plaintiff from performing the ritual. *Id*. Defendant Campos indicated any inmate would be stopped from performing the ritual cleansing in the H Building restroom because it creates safety, security and health risks. ECF No. 38 ¶ 10. Defendant Royce stated he reminded Plaintiff that Muslim inmates should do their religious cleansing in their units before coming to the H Building due to sanitation concerns. ECF No. 38 ¶ 11.

---

[1] Plaintiff described his religious cleansing ritual, termed "wuduh," as a procedure which restores his purity. He indicated wuduh is performed by taking a handful of water to his face two times, washing each hand to his elbow two times, and wiping the top of his head and his bare feet with a moistened palm once. ECF No. 45 at 5.

REPORT AND RECOMMENDATION . . . - 3

On September 17, 2013, in response to Plaintiff's grievance, Washington State DOC Deputy Director Earl X. Wright concurred with DOC Program Administrator Belinda Stewart's response which stated as follows:

> I have verified with Chaplain Rasheed that the ritual purification **before prayer** that you described are a mandatory tenant of your faith. I have communicated with Superintendent Sinclair and arrangements will be made for Muslim offenders to practice this brief (approximately 3 to 5 minutes) ritual cleansing process when necessary.

ECF No. 38, Exh. 3, Att. C (emphasis added). Defendant Aiyeku stated she reviewed Belinda Stewart's entire response to Plaintiff's grievance and indicated the response specified the ritual cleansing was required before prayer and Muslim offenders were allowed to practice this brief ritual cleansing as necessary only before prayer. ECF No. 38, Exh. 3 ¶ 11. Defendant Aiyeku stated the response was specific to before prayer; it did not speak to any requirements after each use of the restroom. ECF No. 38, Exh. 3 ¶ 11.

On June 21, 2014, Plaintiff used the restroom in the H Building and then attempted to use the restroom sink to perform his religious cleansing ritual. ECF No. 9 at 8. Defendants Royce and Campos again stopped Plaintiff from performing the ritual. *Id*. Defendant Campos stated that Plaintiff's pants were down at his ankles while he was at the sink cleansing himself. ECF No. 38 ¶ 13. Plaintiff adamantly denies he exposed himself, ECF No. 26 at 3, indicating he would not perform the religious cleansing ceremony in a state of undress, ECF No. 45 at 7. Plaintiff does acknowledge he placed his feet on the sink. ECF No. 45 at 37. It was explained to Plaintiff that inmates were not allowed to perform the ritual cleansing in the H Building restroom. ECF No. 38 ¶ 14.

On September 10 or 11, 2014, Plaintiff asked Defendants Royse and Campos if he could perform his ritual cleansing after his use of the restroom in the H Building. ECF No. 38 ¶ 15-16. He was told he could not perform his religious

///

REPORT AND RECOMMENDATION . . . - 4

cleansing ritual in the H Building restroom. *Id*. Plaintiff was eventually escorted back to his unit. ECF No. 38 ¶ 17.

On September 19, 2014, Dale N. Caldwell, Washington State DOC Grievance Program Manager, responded to Plaintiff's correspondence, dated August 21, 2014. ECF No. 38, Exh. 4, Att. F. Mr. Caldwell indicated he was "including the facility chaplain in this correspondence to ensure that the appropriate, 'washing,' procedure is afforded to [Plaintiff] as stipulated in [his] level III response from Deputy Director Wright dated 09/17/13." *Id*.

On September 26, 2014, designee WSP Superintendent Chris Brown responded to Plaintiff's grievance and indicated he concurred with the findings of Captain Frank Leonetti. ECF No. 41 ¶ 22; ECF No. 47 at 2. It was determined Plaintiff was allowed to comply with the tenants of his religion in program areas, but he must also comply with the sanitation concerns of the WSP and confine his activities to ritual cleansings. ECF No. 47 at 2. It was stated that the majority of Plaintiff's ritual cleansings should take place in his cell prior to programming. *Id*.

On October 6, 2014, Plaintiff was again attempting to perform his ritual cleansing in the H Building restroom. ECF No. 38 ¶ 18. Plaintiff claims he was then "accosted" by Defendants Royse and Campos and kicked out of the library. ECF No. 9 at 12. Defendant Royse stated he gave Plaintiff a directive to stop the cleansing and get dressed. ECF No. 38 ¶ 18. Plaintiff was returned to his unit for not complying with the rules. *Id*.

WSP Associate Superintendent Carla Schettler stated that allowing inmates to practice ritual cleansing in the H Building restroom presents a threat to facility safety, security, health and orderly operations. ECF No. 38 ¶ 28. Facility restrooms are not meant for cleaning offenders' bodies; they are meant for inmates to relieve themselves and to wash their hands. ECF No. 38 ¶ 29. Rules against ritual cleansing in the H Building restroom are in place so that other inmates are not exposed to germs and bacteria, to avoid inciting inmate altercations, and so

REPORT AND RECOMMENDATION . . . - 5

inmates respect each other and do not impose their religious beliefs on others. ECF No. 38 ¶¶ 28-31. Plaintiff is, however, permitted to practice his ritual cleansing in his cell or in his unit's showers before coming to the H Building, and Plaintiff is allowed to use the showers several times a day if he so chooses. ECF No. 38 ¶ 34. In addition, since November 2014, a box of sand has been made available in the Chapel in the West Complex that can be utilized for the Muslim religious cleansing ritual. ECF No. 38 ¶ 35.

## LEGAL STANDARDS

### A. SUMMARY JUDGMENT

Federal Rule of Civil Procedure (FED. R. CIV. P.) 56(a) states a party is entitled to summary judgment in its favor if "the movant shows that there is no genuine dispute as to any material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986). Once the moving party has carried the burden under Rule 56, the party opposing the motion must do more than simply show there is "some metaphysical doubt" as to the material facts. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The party opposing the motion must present facts in evidentiary form and cannot rest merely on the pleadings. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Genuine issues are not raised by mere conclusory or speculative allegations. *Lujan v. National Wildlife Federation*, 497 U.S. 871, 888 (1990). The Court will examine the direct and circumstantial proof offered by the non-moving party and the permissible inferences which may be drawn from such evidence. A party cannot defeat a summary judgment motion by drawing strength from the weakness of the other party's argument or by showing "that it will discredit the moving party's evidence at trial and proceed in the hope that something can be developed at trial in the way of evidence to support its claim." *T.W. Elec. Service, Inc. v. Pacific Elec. Contractors Ass'n.*, 809 F.2d 626, 630 (9th Cir. 1987); *see also Triton Energy Corp. v. Square D Co.*, 68 F.3d 1216 (9th Cir. 1995).

Finally, the Supreme Court has ruled that FED. R. CIV. P. 56(c) requires entry of summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322. "A complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id.* at 323. The question on summary judgment, then, is "whether the evidence is so one-sided that one party must prevail as a matter of law." *Anderson,* 477 U.S. at 251-252. Where there is no evidence on which a jury could reasonably find for the non-moving party, summary judgment is appropriate. *Id.* at 252.

**B.    42 U.S.C. § 1983**

To state a claim under 42 U.S.C. § 1983, Plaintiff must allege (1) a violation of a right secured by the Constitution and laws of the United States, and (2) the deprivation was committed by a person acting under color of state law. *Parratt v. Taylor*, 451 U.S. 527, 535 (1981) (*overruled in part on other grounds*, *Daniels v. Williams*, 474 U.S. 327, 330-331 (1986)); *Leer v. Murphy*, 844 F.2d 628, 632-633 (9th Cir. 1988). A person subjects another to a deprivation of a constitutional right when committing an affirmative act, participating in another's affirmative act, or omitting to perform an act which is legally required. *Johnson v. Duffy*, 588 F.2d 740, 743 (9th Cir. 1978). To hold a defendant liable for damages, the wrongdoer must personally cause the violation. *Leer*, 844 F.2d at 633. There is no *respondeat superior* liability. *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). Thus, a supervisor is liable under Section 1983 only if he/she "participated in or directed the violation, or knew of the violation and failed to prevent it." *Id*.

Where, as here, monetary damages are sought, sweeping conclusory allegations against a prison official will not suffice; an inmate must set forth specific facts as to each individual defendant's participation. *Leer*, 844 F.2d at 634. Further, the Eleventh Amendment to the United States Constitution bars

lawsuits by a citizen against its own state in federal courts. *Welch v. Texas Dept. of Highways and Pub. Transp.*, 483 U.S. 468, 472-473 (1987). Neither a state agency nor a state official acting in his or her official capacity is a "person" under 42 U.S.C. § 1983; therefore, the Eleventh Amendment bars lawsuits against state agencies and state officials in their official capacity in federal court. *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989); *see also Holley v. California Dep't of Corr.*, 599 F.3d 1108, 1112-1113 (9th Cir. 2010).

Although the Eleventh Amendment does not bar suit against defendants in their individual capacity, prison officials are "shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). A plaintiff who seeks damages shoulders the burden of proving the rights are "clearly established." *Davis v. Scherer*, 468 U.S. 183, 197 (1984). "[B]are allegations of malice do not suffice to subject government officials . . . to the costs of trial." *Harlow,* 457 U.S. at 818. A plaintiff must show that a constitutional right was violated and the specific right claimed was clearly established at the time of the alleged violations. *Pearson v. Callahan*, 555 U.S. 223, (2009); *Davis v. Scherer*, 468 U.S. 183, 197 (1984). Whether the law was clearly established at the time of the alleged violation is a question of law, not of facts. *Harlow*, 457 U.S. at 818 (judge on summary judgment may determine if the law was clearly established at the time).

## DISCUSSION

A. **FREE EXERCISE CLAIM**

Plaintiff alleges Defendants violated his civil rights under the First Amendment Free Exercise Clause by preventing him from practicing the mandates of his Muslim faith by prohibiting him from engaging in cleansing rituals in the Building H restroom. ECF No. 9.

///

The First Amendment to the United States Constitution provides, in relevant part, that Congress shall make no law prohibiting the free exercise of religion. U.S. Const., amend. I. The United States Supreme Court has held that prisoners retain their First Amendment rights, including the right to free exercise of religion. *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 348 (1987). A human being does not cease to be human because the human being is a prisoner of the state. *Ward v. Walsh*, 1 F.3d 873, 877 (9th Cir. 1993). However, the Court has also recognized that limitations on a prisoner's free exercise rights arise from both the fact of incarceration and from valid penological objectives. *O'Lone*, 482 U.S. at 348 (free-exercise rights are "necessarily limited by the fact of incarceration, and may be curtailed in order to achieve legitimate correctional goals or to maintain prison security").

### 1. Substantial Burden

To show that a First Amendment right to free exercise of religion has been violated, a prisoner must demonstrate a burden to a sincerely held belief that is rooted in religion. *Shakur v. Schriro*, 514 F.3d 878, 884 (9th Cir. 2008). To "substantially burden" the practice of an individual's religion, the interference must be more than an inconvenience, *Freeman v. Arpaio*, 125 F.3d 732, 737 (9th Cir. 1997), or an isolated incident or short-term occurrence, *Canell v. Lightner*, 143 F.3d 1210, 1215 (9th Cir. 1998). "[I]ncidental effects of government programs, which may make it more difficult to practice certain religions but which have no tendency to coerce individuals into acting contrary to their religious beliefs" are insufficient to state a claim under the Free Exercise Clause. *Lovelace v. Lee*, 472 F.3d 174, 194 (4th Cir. 2006).

Defendants do not dispute that Plaintiff's belief in his ritual cleansing process is sincerely held and rooted in his Muslim religion. ECF No. 37 at 4-5. There is additionally no dispute that Defendants prevented Plaintiff from performing the cleansing rituals in the Building H restroom on multiple occasions.

REPORT AND RECOMMENDATION . . . - 9

However, Plaintiff has presented no facts which demonstrate the named defendants completely denied him the ability to practice his religion at the WSP.

The DOC provides religious and cultural opportunities for inmates within available resources and recognizes that many religions incorporate religious, traditional, and cultural practices. ECF No. 38, Exh. 5 ¶ 9. Inmates have access to religious activities offered at the WSP, provided their presence at the activity does not present a threat to facility safety or security. ECF No. 38, Exh. 5 ¶ 11.

Plaintiff does not allege that Defendants completely prevented him from performing his mandated cleansing rituals; merely that Defendants prevented him from performing the ritual in the Building H restroom. As indicated by Associate Superintendent Schettler, the WSP staff have attempted to accommodate Plaintiff so he can exercise his Muslim practices. ECF No. 38, Exh. 5 ¶ 10. Plaintiff is able to practice his ritual cleansing in his cell or in his unit's showers before coming to the H Building. ECF No. 38, Exh. 5 ¶ 10. Plaintiff is permitted to use the showers several times a day, if he chooses, as they are open in the morning, afternoon, and night. ECF No. 38, Exh. 5 ¶ 10. Furthermore, since November 2014, a box of sand has been made available in the Chapel in the West Complex that allows the Muslim inmates to cleanse their hands, face, and feet prior to prayer if they believe they have become unclean since their last purification. ECF No. 38, Exh. 5, Att. B.

Plaintiff has failed to show that Defendants' acts of prohibiting him from engaging in cleansing rituals in the Building H restroom amounted to a substantial burden upon his right to freely practice his religion.

### 2. Valid Penological Interests

Even if Defendants' actions were determined to be a substantial burden on Plaintiff's right to freely practice his religion, the Court finds the restriction was based on valid penological interests. *See infra.*

///

///

REPORT AND RECOMMENDATION . . . - 10

When a prison regulation impinges on an inmate's constitutional rights, the regulation will still be deemed valid if it is reasonably related to legitimate penological interests. *Turner v. Safley*, 482 U.S. 78, 89-91 (1987). To determine whether a regulation or policy is reasonably related to a legitimate penological interest, the Court must consider: (1) if there exists a valid, rational connection between the prison regulation and the legitimate governmental interest put forth to justify it; (2) whether there are alternative means of exercising the regulated right that remain open to the inmate; (3) the impact that an accommodation of the asserted constitutional right will have upon guards, other inmates, and prison resources; and (4) whether there exists ready alternatives that fully meet the inmate's demands at a *de minimis* cost to valid penological interests. *Id*.

Inmates at the WSP are not allowed to practice ritual cleansing in the H Building restroom because it poses a threat to facility safety, security, health and orderly operations. ECF No. 38, Exh. 5 ¶ 7. The H Building consists of staff offices, a State Library, Law Library, Chapel, Food Services, Recreation/Gym and multiple educations rooms. ECF No. 38, Exh. 5 ¶ 6. The restrooms are centrally located, and there is a lot of movement in the area with inmates walking to various facilities. ECF No. 38, Exh. 5 ¶ 6. The restroom is public; therefore, if an inmate is permitted to clean his personal body parts in the restroom sink, it would not be sanitary as other inmates would be exposed to germs, bacteria, etc. ECF No. 38, Exh. 5 ¶ 7. In addition, other inmates could be offended by an inmate performing ritual cleansing at the restroom sink. *Id*. Inmates could become angry and an altercation could be incited. *Id*. The decision to prohibit inmates from ritual cleansing in the H Building restroom serves the legitimate penological interests of safety, security and sanitation.[2] Plaintiff also had other means to accomplish his

---

[2]Plaintiff's response to Defendants' Motion for Summary Judgment and statement of facts does not challenge with specificity Defendants' assertion that

REPORT AND RECOMMENDATION . . . - 11

ritual cleansing. As discussed above, Plaintiff is able to practice his ritual cleansing in his cell or in his unit's showers before coming to the H Building, and, since November 2014, a box of sand is available in the Chapel in the West Complex that allows the Muslim inmates to perform the ritual cleanse. ECF No. 38, Exh. 5 ¶ 10; ECF No. 38, Exh. 5, Att. B. Accordingly, the restriction was based on valid penological interests and alternatives existed that would have fully met Plaintiff's demands at a *de minimis* cost to those valid penological interests.

The Court concludes that Plaintiff has not demonstrated Defendants placed a substantial burden on his religious exercise. Even if Plaintiff was able to successfully demonstrate a substantial burden, Defendants have shown legitimate penological interests for the restriction and the existence of alternatives for Plaintiff to accomplish his ritual cleansing. *See Turner*, 482 U.S. at 89-91. The Court thus recommends granting Defendants' motion for summary judgment on Plaintiff's First Amendment Free Exercise claim.

**B.    CONSPIRACY CLAIM**

Plaintiff also alleges a cause of action pursuant to 42 U.S.C. § 1985. ECF No. 9 at 5. Plaintiff claims Defendants Aiyeku and Young joined a conspiracy with Defendants Royce and Campos to neutralize a prior grievance (No. 13534495) which he believed permitted him to perform the ritual cleansing whenever he deemed it necessary. ECF No. 9 at 8-11.

42 U.S.C. § 1985 proscribes conspiracies to interfere with an individual's civil rights. To prevail, Plaintiff must show: (1) a conspiracy, (2) to deprive any person or class of persons of the equal protection of the laws, (3) an act by one of the conspirators in furtherance of the conspiracy, and (4) a personal injury,

---

there are legitimate penological interests of safety, security and sanitation that support a restriction on Plaintiff's ability to perform ritual cleansing in the H Building restroom. ECF No. 45.

REPORT AND RECOMMENDATION . . . - 12

property damage or deprivation of any right or privilege of a citizen of the United States. *Gillispie v. Civiletti*, 629 F.2d 637, 641 (9th Cir. 1980); *Giffin v. Breckenridge*, 403 U.S. 88, 102-103 (1971). Section 1985 applies only where there is a racial or other class-based discriminatory animus behind the conspirators' actions. *Sever v. Alaska Pulp Corp.*, 978 F.2d 1529, 1536 (9th Cir. 1992).

The Ninth Circuit has held that a claim under Section 1985 must allege specific facts to support the allegation that defendants conspired together. *Karim-Panahi v. Los Angeles Police Dept.*, 839 F.2d 621, 626 (9th Cir. 1988). A mere allegation of conspiracy without factual specificity is insufficient to state a claim under 42 U.S.C. § 1985. *Id.*; *Sanchez v. City of Santa Anna*, 936 F.2d 1027, 1039 (9th Cir. 1991).

On September 17, 2013, in response to Plaintiff's grievance No. 13534495, Washington State DOC Deputy Director Earl X. Wright concurred with DOC Program Administrator Belinda Stewart's response which stated as follows:

> I have verified with Chaplain Rasheed that the ritual purification **before prayer** that you described are a mandatory tenant of your faith. I have communicated with Superintendent Sinclair and arrangements will be made for Muslim offenders to practice this brief (approximately 3 to 5 minutes) ritual cleansing process when necessary.

ECF No. 38, Exh. 3, Att. C (emphasis added). Defendant Aiyeku reviewed Belinda Stewart's response to Plaintiff's grievance No. 13534495 and determined the response specified the ritual cleansing was required "before prayer" and Muslim offenders were allowed to practice this brief ritual cleansing as necessary only before prayer. ECF No. 38, Exh. 3 ¶ 11. It did not permit Plaintiff to perform ritual cleansing whenever he deemed it necessary. The grievance response did not mention any requirements pertaining to Plaintiff's use of the restroom. ECF No. 38, Exh. 3 ¶ 11.

///

///

REPORT AND RECOMMENDATION . . . - 13

Consequently, Plaintiff's belief that a response to a prior grievance (No. 13534495) permitted him to perform the ritual cleansing whenever he thought it necessary, ECF No. 9 at 8-11, is contrary to the record.

Plaintiff also fails to properly substantiate his claim that a conspiracy existed to rescind the prior grievance response. In any event, the evidence does not demonstrate that Defendants participated in a conspiracy to rescind Plaintiff's prior grievance response.

The declarations of Defendants Campos and Royce state that at no time did Defendant Aiyeku direct them to deny Plaintiff's right to practice his religion. ECF No. 38, Exh. 1 ¶ 9; ECF No. 38, Exh. 2 ¶ 7. While they disallowed the ritual cleansing in the public restroom in the H Building, Plaintiff was permitted to perform the ritual cleansing in his living unit. *Id.* Defendants Campos and Royse state that they did not collaborate with Defendants Young and Aiyeku, or any other DOC staff, to invalidate Plaintiff's prior grievance. ECF No. 38, Exh. 2 ¶ 10; ECF No. 38, Exh. 1 ¶ 12.

Defendant Campos stated that ritual cleansing is not allowed in the H Building restroom as it creates safety, security and health risks, and it was his understanding that Muslim inmates had to do their ritual cleansing in their cells before coming to Education/Chapel. ECF No. 38, Exh. 1 ¶¶ 5, 11. Defendant Royse indicated Muslim inmates are to perform their ritual cleansing in the units before coming to the H Building because it is unsanitary for other inmates and there are other inmates that need to use the restroom during these times. ECF No. 38, Exh. 2 ¶ 5. These statements of Defendants Campos and Royse are further supported by Associate Superintendent Schettler. ECF No. 38, Exh. 5. Associate Superintendent Schettler stated that rules against ritual cleansing in the H Building restroom are in place so that other inmates are not exposed to germs and bacteria, to avoid inciting inmate altercations, and so inmates respect each other and do not impose their religious beliefs on others. ECF No. 38, Exh. 5 ¶ 7. Allowing

REPORT AND RECOMMENDATION . . . - 14

inmates to practice ritual cleansing in the H Building restroom would present a threat to facility safety, security, health and orderly operations. *Id*.

Defendant Aiyeku's declaration states at no time was she involved in a conspiracy with Defendants Campos and Royce to deny Plaintiff's religious freedom. ECF No. 38, Exh. 3 ¶ 17. There was no conspiracy to neutralize a response to a prior grievance, ECF No. 38, Exh. 3 ¶ 10, and, importantly, the response to the prior grievance did not state that Plaintiff could perform the religious cleansing ritual each time he used the restroom, ECF No. 38, Exh. 3 ¶¶ 10-11. Defendant Aiyeku indicates ritual cleansing is not allowed in the H Building restroom due to safety, security and sanitation risks. ECF No. 38, Exh. 3 ¶¶ 7, 12.

Defendant Young's declaration states at no time was he involved in a conspiracy with Defendants Campos and Royce to deny Plaintiff's religious freedom. ECF No. 38, Exh. 4, ¶ 18. Defendant Young indicates he took no steps to "neutralize" Plaintiff's prior grievance or reverse any religious freedoms Plaintiff believed he was granted by the response to the prior grievance. ECF No. 38, Exh. 4 ¶¶ 12-13. Defendant Young states that Plaintiff misquotes the response to the prior grievance which only permitted the ritual purification practice "before prayer." ECF No. 38, Exh. 3, Att. C.

Plaintiff has failed to provide evidentiary support for his assertions of a conspiracy in this case, and, based on the foregoing, there is no evidence the named defendants conspired together to rescind Plaintiff's prior grievance response or otherwise deprive Plaintiff of the equal protection of law. Accordingly, it is recommended that Defendants' motion for summary judgment be granted with respect to Plaintiff's Section 1985 conspiracy claim.

**C.    QUALIFIED IMMUNITY**

Based on the foregoing, the Court need not reach Defendants' argument that they are also entitled to qualified immunity in this case. ECF No. 37 at 13-15;

REPORT AND RECOMMENDATION . . . - 15

ECF No. 46. Nevertheless, the Court notes that it appears the claims against Defendants should additionally be barred under the doctrine of qualified immunity.

Government officials enjoy qualified immunity from civil damages unless their conduct violates "clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). In ruling upon the issue of qualified immunity, the initial inquiry is whether, taken in the light most favorable to the party asserting the injury, the facts alleged show Defendants' conduct violated a constitutional right. *Saucier v. Katz*, 533 U.S. 194, 201 (2001), *receded from by Pearson v. Callahan*, 555 U.S. 223, 236 (2009). The Court must also determine whether the right was clearly established at the time of the conduct at issue. *Saucier*, 533 U.S. at 201. "[T]he right the official is alleged to have violated must have been 'clearly established' in a more particularized, and hence more relevant, sense: The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Saucier*, 533 U.S. at 202 (citation omitted). Qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986).

The Court finds Defendants did not knowingly violate a clearly established law. As discussed above, Plaintiff has not demonstrated Defendants placed a substantial burden on his religious exercise. Even if Plaintiff was able to show a substantial burden, Defendants have shown legitimate penological interests exist for the restriction in the H Building restroom (safety, security and sanitation) and the existence of alternatives for Plaintiff to accomplish his ritual cleansing. *See supra*. The Supreme Court has recognized that limitations on a prisoner's free exercise rights arise from both the fact of incarceration and from valid penological objectives. *O'Lone*, 482 U.S. at 348 (free-exercise rights are "necessarily limited by the fact of incarceration, and may be curtailed in order to achieve legitimate correctional goals or to maintain prison security"). No reasonable official, acting

REPORT AND RECOMMENDATION . . . - 16

in the place of the named defendants, would have understood that what he was doing violated Plaintiff's free exercise rights. The same is true with respect to Plaintiff's conspiracy claim: no reasonable official, acting in the place of the named defendants, would have understood that interpreting Plaintiff's prior grievance response to limit the ritual cleansing to times "before prayer" violated Plaintiff's Constitutional rights. Plaintiff has failed to show that Defendants violated his civil rights in this case. Therefore, the Court recommends Defendants be deemed entitled to qualified immunity in this case as well.

Accordingly, **IT IS RECOMMENDED:**

1. Defendants' Motion for Summary Judgment, **ECF No. 37**, be **GRANTED**; and

2. Plaintiff's Complaint, **ECF No. 9**, be **DISMISSED WITH PREJUDICE**.

**OBJECTIONS**

Any party may object to a magistrate judge's proposed findings, recommendations or report within **fourteen (14)** days following service with a copy thereof. Such party shall file written objections with the Clerk of the Court and serve objections on all parties, specifically identifying the portions to which objection is being made, and the basis therefor. Any response to the objection shall be filed within **fourteen (14)** days after receipt of the objection. Attention is directed to Fed. R. Civ. P. 6(d), which adds additional time after certain kinds of service.

A district judge will make a de novo determination of those portions to which objection is made and may accept, reject, or modify the magistrate judge's determination. The judge need not conduct a new hearing or hear arguments and may consider the magistrate judge's record and make an independent determination thereon. The judge may, but is not required to, accept or consider additional evidence, or may recommit the matter to the magistrate judge with

REPORT AND RECOMMENDATION . . . - 17

instructions. *United States v. Howell*, 231 F.3d 615, 621 (9th Cir. 2000); 28 U.S.C. § 636(b)(1)(B) and (C), Fed. R. Civ. P. 72(b)(3); LMR 4, Local Rules for the Eastern District of Washington.

A magistrate judge's recommendation cannot be appealed to a court of appeals; only the district judge's order or judgment can be appealed.

The District Court Executive is directed to file this Report and Recommendation and provide copies to Plaintiff, counsel for Defendants and the referring district judge.

DATED February 3, 2016.



_____
JOHN T. RODGERS
UNITED STATES MAGISTRATE JUDGE

REPORT AND RECOMMENDATION . . . - 18